**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────────

**KAMERI L.H., O/B/O B.D.H.,**

                              **Plaintiff,**                    **22-CV-175Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**

─────────────────────────────────

**DECISION AND ORDER**

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #15.

**BACKGROUND**

Plaintiff applied for supplemental security income ("SSI"), with the Social

Security Administration ("SSA"), on June 4, 2019, alleging disability on behalf of her

child, age 7, since birth due to seizures, tics and chronic bronchitis. Dkt. #6, p.58.

On August 12, 2020, plaintiff and the child appeared with counsel and

testified at an administrative hearing conducted by telephone before Administrative Law

Judge ("ALJ"), Stephan Bell. Dkt. #6 pp.36-57. At the outset of the hearing, counsel advised that there were quite a few outstanding records, including records from Niagara Street Pediatrics; Northwood Elementary School; Oishei Children's Neurology Outpatient; and Women's and Children's Hospital. Dkt. #6, pp.40-41. Counsel requested 30 days to obtain the records, including school records. Dkt. #6, p.41. The ALJ granted counsel an additional 30 days to obtain the records and advised counsel that if there was an issue obtaining records, particularly the school records given the status of schools due to the Covid-19 pandemic, counsel should advise and the ALJ would further extend the deadline. Dkt. #6, pp.41-42.

Plaintiff testified that the child has a history of grand mal and absent seizures, with the most recent hospitalization, for absent seizures, occurring in February of 2019. Dkt. #6, pp.43-45. Plaintiff estimated that the child experiences an absent seizure probably twice a week. Dkt. #6, p.52. She described an absent seizure as the child staring and squinting, with her mouth moving, before coming back to reality. Dkt. #6, p.45. In addition to medication for her seizure disorder, the child takes medication for attention deficit hyperactivity disorder ("ADHD"), which has caused her to lose "so much weight." Dkt. #6, p.46. Plaintiff also described the child as "working with a lung and a-half" which makes it hard for the child to walk to the end of the block or run without becoming dizzy. Dkt. #6, p.53.

Plaintiff testified that prior to the February seizure, the child was "like the smartest" but "she's the last one to know everything right now." Dkt. #6, p.47. The

teacher informed plaintiff that the child was not paying attention, was staring off like her mind is somewhere else and was lost. Dkt. #6, pp.47 & 54. Plaintiff noted that the child's grades were "slipping in some spots" last year and that the child was frustrated. Dkt. #6, p.47. Plaintiff suggested that given the pandemic "and all the problems she's having, and everything with her health," she was going to home school the child for the upcoming school year. Dkt. #6, p.48.

Plaintiff noted that the child gets along well with her teachers and other care givers, but socializes with younger children and talks "babyish." Dkt. #6, pp.49. Although she is nine, plaintiff described the child as thinking like a five year-old. Dkt. #6, p.56. For example, plaintiff testified that the child cannot be left in the yard by herself because she has wandered off with friends and also got lost after getting off the bus. Dkt. #6, p.50. Plaintiff complained that the child does not take direction; requires repeated instruction; does not put her things away; and stomps through the house throwing chairs, kicking walls, and knocking over the garbage can when she is mad. Dkt. #6, pp.53-55.

The ALJ rendered a decision that plaintiff was not disabled on October 2, 2020. Dkt. #6, pp.24-30. The Appeals Council denied review on January 10, 2022. Dkt. #6, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on March 2, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). So long as "substantial evidence supports the ALJ's decision, a court will not remand simply because the evidence also supports an alternate conclusion." *Keough o/b/o Jamt v. Comm'r of Soc. Sec'y*, 18-CV-1065, 2020 WL 4504988, at *3 (W.D.N.Y. Aug. 5, 2020), *quoting Cartagena v. Comm'r of Soc. Sec'y*, 18-CV-245, 2019 WL 4750425, at *4 (W.D.N.Y. Sept. 27, 2019).

An individual under the age of 18 will be considered disabled under the Social Security Act ("Act"), if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner must follow a three-step sequential evaluation to determine whether a child is disabled within the meaning of the Act. 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(a) & (b). If not, the ALJ proceeds to step two and determines whether the

child has an impairment or combination of impairments that is severe, *i.e.*, causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the ALJ finds a severe impairment or combination of impairments, the ALJ proceeds to step three and examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 416.924(d).

To evaluate functional equivalence, the ALJ considers how the child functions in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). A child has a marked limitation when the impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(2)(i). A child has an extreme limitation when the impairment or combination of impairments interferes very seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(3)(i).

In the instant case, the ALJ made the following findings with regard to the three-step sequential evaluation: (1) the child had not engaged in substantial gainful activity since the application date of June 4, 2019; (2) the child's idiopathic epilepsy with

seizures and ADHD constitute severe impairments; and (3) the child's impairments did

not meet or medically or functionally equal any listed impairment, and the child was not,

therefore, disabled within the meaning of the SSA. Dkt. #6, pp.24-30. More specifically,

the ALJ determined that the child exhibited: (1) no limitation in acquiring and using

information; (2) less than marked limitation in attending and completing tasks; (3) no

limitation in interacting and relating with others; (4) no limitation in moving about and

manipulating objects; (5) no limitation in ability to care for self; and (6) less than a

marked limitation in health and physical well-being. Dkt. #4, p.27.


<u>Development of the Record</u>

Plaintiff argues that the ALJ failed to develop the administrative record

and improperly rendered a decision without the benefit of the child's education records.

Dkt. #10-1, pp.8-11.


The Commissioner argues that the ALJ fulfilled his duty to develop the

record by holding the record open as requested by counsel and notes that the school's

response that the child was not in special education post-dated plaintiff's suggestion of

an IEP. Dkt. #11-1, pp.16 & 18-19. In any event, the Commissioner notes that the

record suggests that the child was doing well at school. Dkt. #11-1, pp.16-17.


Because "Social Security proceedings are inquisitorial rather than

adversarial," the ALJ has an affirmative duty to investigate the facts and develop the

record regardless of whether the claimant is represented by counsel. *DeGraff v.*

*Comm'r of Soc. Sec.*, 850 Fed. App'x 130, 131 (2d Cir. 2021), *quoting Sims v. Apfel*, 530 U.S. 103, 110-22 (2000). This obligation encompasses not only the duty to obtain medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity. *Shannon H. v. Comm'r of Soc. Sec.*, 20-CV-1631, 2022 WL 1793198, at *4 (W.D.N.Y. June 2, 2022). However, the ALJ's duty to develop the record is triggered only if the evidence before the ALJ is inadequate to determine whether the claimant is disabled. *Id.* at *5. The ALJ is not obligated to seek additional medical records where the administrative record is sufficient for the ALJ to render a disability determination. *Johnson v. Comm'r of Soc. Sec.*, 16-CV-631, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018).

Where the claimant is represented by counsel, the ALJ may satisfy the duty to develop the record by relying on counsel to obtain additional documentation. *Ballantyne T. v. Comm'r of Soc. Sec.*, 23-CV-11182, 2025 WL 551820, at *8 (S.D.N.Y. Feb. 19, 2025) (collecting cases). Where the ALJ holds the record open for counsel to obtain additional records, but the claimant fails to provide supplemental evidence or seek additional assistance in obtaining such evidence, the ALJ has met his obligations to develop the administrative record. *Joseph B. v. Comm'r of Soc. Sec.*, 23-CV-652, 2024 WL 4217371, at *6 (N.D.N.Y. Aug. 29, 2024) (collecting cases). "Ultimately, it is the claimant's duty and burden to prove that they are disabled in the period for which benefits are sought." *Ballantyne T. v.,* 2025 WL 551820, at *8; *See also Linda P. v. Comm'r of Soc. Sec.*, 21-CV-625, 2024 WL 1257410, at *10 (W.D.N.Y. Mar. 25, 2024)

(recognizing that counsel "has an affirmative duty to provide competent assistance to the claimant, including acting with reasonable promptness to help obtain information or evidence that the claimant must submit.") (*citing* SSR 17-4p, 2017 WL 4736984).

The evidence of record regarding the child's behavioral issues begins on February 14, 2019 with a request from the child's father to the child's neurologist, Dr. Weinstock, for advice regarding the child's "behavioral outbursts when she does not get her way." Dkt. #6, p.813.

On February 28, 2019, the child's parents reported that the child "continues to excel at school, and is reportedly one of the top 3 students at school and has 'model behavior at school'" but was exhibiting behavioral issues at home. Dkt. #6, p.697. The neurologist referred the child for a long-term video EEG to discontinue one of the child's seizure medications, Keppra, due to significant behavioral problems, and build up her other medications as needed. Dkt. #6, p.701.

On examination on March 15, 2019, the child exhibited "significant impulsivity and a tendency for aggressive behaviors." Dkt. #6, p.693.

On April 30, 2019, Dr. Weinstock's notes indicate that Keppra "was discontinued and the patient's behavior has improved significantly." Dkt. #6, p.690. The child was observed to be "quite impulsive and hyperactive but friendly and cooperative; behavior is overall improved as compared to prior visit." Dkt. #6, p.689.

On May 16, 2019, the child was seen by her pediatrician to follow up regarding a concern by neurology that the child "may have ADHD in addition to her seizure disorder." Dkt. #6, p.1032. The child's parents reported that the child "can be difficult to refocus and get back on task when at home" and "will also be fussy when she doesn't get her way." Dkt. #6, p.1032. The child's parents were given parent and teacher Vanderbilt Assessments for ADHD. Dkt. #6, p.1034.

On June 7, 2019, the child's mother reported that in addition to behavior concerns previously reported, the child's grades were dropping since the onset of absence seizures. Dkt. #6, p.758. The pediatrician noted the absence of a Vanderbilt Assessment and the need to confer with neurology before starting any medication. Dkt. #6, p.758.

On June 18, 2019, pediatric neurology clinic notes indicate that the child "continued to do well at school and has model behavior at school" but "the child's behavior can sometimes be difficult at home." Dkt. #6, p.681. The child's mother denied any new seizure activity since February of 2019, but expressed concern about a possible diagnosis of ADHD, as well as sporadic episodes of exaggerated blinking. Dkt. #6, p.682. The child was observed to be easily distracted with decreased concentration. Dkt. #6, p.683.

On June 21, 2019, the pediatrician reviewed the Teacher Vanderbilt Assessment and noted that it was "not positive for ADHD." Dkt. #6, p.733. The child

was referred to a neuropsychologist for evaluation in response to the parents' request

for testing and counseling in anticipation of the next school year. Dkt. #6, p.735.

Although the parents reported that the child's ability to focus and perform at school had

diminished since the onset of seizures, the pediatrician noted no behavior concerns and

observed that the child was polite, happy and smiling in the examination room. Dkt. #6,

p.733.

A request for information and questionnaire to the West Seneca Central

School District dated July 17, 2019 was returned with a notation: "Not Special Ed." Dkt.

#6, p.170.

On August 15, 2019, the child's parents reported that Dr. Weinstock felt

the child was exhibiting symptoms of ADHD and inquired why the child had not been

prescribed medication. Dkt. #6, p.716. The pediatrician noted that the parents had not

scheduled an appointment following the prior referral and provided the parents with

another neuropsychology referral to their address persistent concerns. Dkt. #7, p.18.

A consultative psychiatric examination was conducted on September 5,

2019 by Janine Ippolito, Psy.D. Dkt. #6, p.986. Dr. Ippolito noted that plaintiff was

entering third grade in regular education classes with no supportive services. Dkt. #6,

p.986. The child's parents reported that the child's relationships with parents, authority

figures and peers are generally good, although she could be argumentative with her

parents at home. Dkt. #6, p.986. She was reported to have "some friends of the same

age in school." Dkt. #6, p.986. The parents noted that the child would soon be evaluated for ADHD and reported "that she is hyperactive, has difficulty focusing and paying attention to tasks, gets distracted easily, talks excessively and talks over others and engages in excessive motor behavior at home." Dkt. #6, p.986. She was observed by Dr. Ippolito to "be hyperactive and talkative" throughout the evaluation, "often interrupting her parents and [Dr. Ippolito] when they were speaking." Dkt. #6, p.986. The child reported her typical mood as happy; her mother reported that she "sometimes gets frustrated and loses patience when she has difficulty doing something." Dkt. #6, p.986.

The child was observed to be cooperative, with an age appropriate manner of relating and social skills and a restless and hyperactive appearance. Dkt. #6, p.987. Her recent and remote memory skills were impaired due to distractability. Dkt. #6, p.988. Dr. Ippolito diagnosed the child with ADHD and opined that she would likely benefit from medication management to address ADHD symptoms. Dkt. #6, pp.988-989. Dr. Ippolito determined that there was no evidence of limitation in the child's ability to respond appropriately to changes in the environment, learn in accordance to cognitive functioning, ask questions and request assistance in an age-appropriate manner, be aware of danger and take needed precautions and interact adequately with peers and adults. Dkt. #6, p.988. Dr. Ippolito further determined that the child would have mild to moderate limitations in the her ability to attend to, follow and understand age-appropriate directions, sustain concentration and complete age-appropriate tasks, and adequately maintain appropriate social behavior. Dkt. #6, p.988.

On December 10, 2019, the child was observed to be cooperative, with appropriate mood and affect, upon examination by her pediatrician. Dkt. #7, p.31.

On January 9, 2020, the child reported to her pediatrician that she doesn't like school because math is hard, but her grades are okay and she has lots of friends at school. Dkt. #7, p.40. The parents expressed concern about hyperactivity at school and at home. Dkt. #7, p.42. After consultation with Dr. Weinstock, the child was prescribed Adderall XR 5mg. Dkt. #7, p.42.

On January 27, 2020, the child's parents reported no change in concentration or hyperactivity since the start of medication. Dkt. #7, p.52. They also reported the child was doing very poorly in math and that they were concerned about her learning. Dkt. #7, p.52. The pediatrician increased the dosage of Adderall XR to 10 mg, requested the social worker assist in obtaining a Teacher Vanderbilt Assesment and provided the parents with a phone number to request testing for special education services. Dkt. #7, p.53.

On February 10, 2020, the child's parents reported improvement in behavior but felt that the child still struggled in the evening with increased hyperactivity and trouble going to sleep. Dkt. #7, p.63. A Teacher Vanderbilt Assessment reported improvement in ability to sit down and focus during class but that the child "continues to struggle with her class work." Dkt. #7, p.63. The pediatrician encouraged the child's parents to see if the child was eligible for services at school. Dkt. #7, p.65.

The child's Adderrall XR prescription was increased to 15 mg on May 28, 2020 following the parents' report that the child continued to experience difficulty staying on task for extended periods of time and completing assignments. Dkt. #7, p.75.

On June 11, 2020, parents reported a slight improvement in the child's ability to focus, but indicated that, in general, the child remained very inattentive with both school work and household tasks. Dkt. #7, p.86. The Adderall RX dosage was increased to 20 mg. Dkt. #7, p.88.

On July 2, 2020, the child's parents reported "a marked improvement" in the child's behavior and focus, noting much less talking back and pushback when asked to do routine tasks. Dkt. #7, p.97.

The record set forth above is sufficient to support the ALJ's assessment of the child's functioning across the relevant domains and provide substantial evidence for the ALJ's determination that the child was not disabled due to learning and/or behavioral issues. The Court is also satisfied that the ALJ discharged his duty to develop the record by relying upon counsel to obtain outstanding records. The Court has no doubt that plaintiff's experienced and reputable counsel would have requested additional time or assistance from the ALJ if there was additional information available from the child's school relevant to the child's claim of disability.

<u>Consideration of Functional Limitations from Physical Impairments</u>

Plaintiff also argues that the ALJ failed to evaluate any functional effects from the child's necrotizing left lower lobe pneumonia. Dkt. #10-1, pp.11-12.

The Commissioner responds that there is no evidence of any current functional limitations as a result of this illness. Dkt. #11-1, pp.22-25. More generally, the Commissioner argues that the ALJ appropriately considered the evidence of record to account for the child's medically determinable impairments and credible functional limitations. Dkt. #11-1, pp.22-25.

As an initial matter, the Court notes that plaintiff did not allege disability due to the child's history of pneumonia, but from chronic bronchitis. Dkt. #6, p.58. Noting the absence of medical treatment in the past 12 months for asthma/bronchitis, the state agency review examiner determined that the child's chronic bronchitis was non-severe. Dkt. #6, pp.73 & 75.

In any event, while the medical record documents that the child was hospitalized for severe necrotizing pneumonia with pleural effusion secondary to strep pneumonia from November 13, 2014 through January 5, 2015, including four weeks in the pediatric intensive care unit while she was intubated with chest tubes for pneumothroax and pleural effusion, it does not support plaintiff's claim that the child underwent a left lower lobe resection. Dkt. #9, p.163, 233. Moreover, the child "was deemed to be doing well" as of April, 2015, and "no other interventions were

recommended except for routine follow up." Dkt. #7, p.378. The parents reported to the consultative pediatric examiner, Hongbiao Liu, M.D., that the child's most recent visit to a pulmonary specialist was in 2017. Dkt. #6, p.990.

Physical examinations during the relevant time period consistently document no shortness of breath, wheezing, rhonchi, rales, crackles, tachypnea or retraction. Dr. Liu's consultative pediatric examination, conducted on September 5, 2019, revealed no respiratory abnormalities and recommended only that the child avoid dust and other irritating factors due to the parents' report of a history of bronchitis. Dkt. #6, p.990 & 993. The ALJ noted that the child should avoid respiratory irritants in his decision. Dkt. #6, p.29.

Absent any medical evidence in the record that the child was diagnosed with bronchitis or experienced any sequelae from the child's hospitalization with pneumonia during the time frame relevant to this application for disability, the Court finds no legal error in the ALJ's exclusion of any such condition from consideration as a severe medically determinable impairment pursuant to 20 C.F.R. § 416.924(c).

With respect to the child's history of seizures, the parents reported to Dr. Liu that the most recent episode had occurred on February 19, 2019. Dkt. #6, p.990. The medical record indicates a history of febrile and nonfebrile complex seizures beginning in infancy, which were well controlled with medication. Dkt. #6, p.711. An EEG on February 5, 2019 lasting 4 hours captured 33 seizures without obvious clinical

signs. Dkt. #9, p.215. Dr. Weinstock noted that most of the seizures observed on the EEG were not associated with clinical signs and occurred during the course of a febrile illness. Dtk. #6, p.475. On June 18, 2019, the child's mother reported that she had not noticed any clinical seizures following the child's discharge from the hospital with updated medications. Dkt. #6, pp.409-410. Dr. Liu recommended that the child avoid heights. Dkt. #6, p.993. The ALJ recognized the child's diagnosis of epilepsy as a severe impairment, considered the medical record with respect to the child's seizures, and appropriately determined that Dr. Liu's opinion that "the child could participate in social, educational, and entertainment activities at the appropriate age group" (Dkt. #6, p.993), was persuasive. The ALJ's determination is supported by substantial evidence.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:        Buffalo, New York**
**               September 29, 2025**

**  s/ H. Kenneth Schroeder, Jr.  **
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

-16-